UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD C. FUNCHES,

                           Plaintiff,

                                                        1:11-CV-0869
v.                                                      (GTS/CFH)

BRIAN FISCHER, Comm'r of N.Y. State Dep't of Corr.
and Cmty. Supervision; DANIEL F. MARTUSCELLO,
Superintendent of Coxsackie Corr. Facility; J. MEIGS,
Lieutenant at Coxsackie Corr. Facility; SLAVEN,
Sergeant at Coxsackie Corr. Facility; JOHN DOE, Corr.
Officer at Coxsackie Corr. Facility; and JANE DOE,
Corr. Officer at Coxsackie Corr. Facility;

                           Defendants.
_____

APPEARANCES:                                           OF COUNSEL:

EDWARD C. FUNCHES
  Plaintiff, *Pro Se*
215 East 164 Street, Apt. A
Bronx, NY 10456

HON. ERIC T. SCHNEIDERMAN                               COLLEEN D. GALLIGAN, ESQ.
Attorney General for the State of New York             Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* disability-discrimination action filed by Edward

C. Funches ("Plaintiff") against the six above-captioned New York State correctional employees

("Defendants"), are the following motions: (1) Defendants' motion for summary judgment (Dkt.

No. 31); (2) Defendants' motion to amend their Answer (Dkt. No. 31); (3) Plaintiff's cross-

motion for summary judgment (Dkt. No. 38); and (4) Plaintiff's cross-motion to amend his

Complaint (Dkt. No. 45). For the reasons set forth below, Defendants' motion for summary

judgment is granted; Defendants' motion to amend their Answer is granted; Plaintiff's cross-

motion for summary judgment is denied; and Plaintiff's cross-motion to amend his Complaint is

denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges that Defendants failed to appropriately

accommodate his paraplegic disability (which confines him to a wheelchair) in the following

three ways: (1) on April 30, 2011, they prevented him from visiting his "beloved" brother at

Coxsackie Correctional Facility[1] by not repairing a broken wheelchair lift at the facility (until

May 5, 2011); (2) on May 7, 2011, they searched both his person and the upper part of his

wheelchair before his entrance to the facility's visitation room, resulting in an "edgy" visit with

his brother; and (3) on June 25, 2011, they prevented him from attending a Family Day Festival

with his brother by holding the event in the facility's gymnasium, which was not wheelchair

accessible. (*See generally* Dkt. No. 1 [including attachments].)[2] Because this Decision and

---

[1]    From Westlaw and the New York State Department of Corrections and
Community Service's Inmate Locator Service, it appears that, at the time in question, Plaintiff's
brother, Trevis Funches, was serving a sentence for a conviction of, *inter alia*, First Degree
Robbery, Second Degree Attempted Robbery, Second Degree Criminal Possession of a Weapon,
and Third Degree Criminal Possession of a Weapon. Furthermore, from Westlaw, the Bureau of
Prisons' Inmate Locator Service, and the federal judiciary's Public Access to Court Electronic
Records ("PACER") service, it appears that, before the time in question, Plaintiff, a/k/a "Jab,"
had been convicted and incarcerated for racketeering, violent crimes in aid of racketeering
(including murder), auto theft, and distributing narcotics.

[2]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes.").

Order is intended primarily for the review of the parties, the Court will not recite in detail the remaining factual allegations of Plaintiff's Complaint, but will refer the reader to the Complaint in its entirety. (*Id.*)

Based on these factual allegations, Plaintiff asserts two claims against Defendants: (1) Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (2) Defendants violated the Rehabilitation Act, 29 U.S.C. § 794(a). (*Id.*)[3] As remedies for these violations, Plaintiff seeks $3,000,000 in damages and an injunction ordering Defendants to permit Plaintiff to visit his brother. (*Id.*)

### B. Parties' Briefing on Defendants' Motion for Summary Judgment

### 1. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert four arguments. (Dkt. No. 31, Attach. 13 [Defs.' Memo. of Law].)

First, argue Defendants, as a threshold matter, Plaintiff's Complaint should be dismissed for failing to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing, a claim under either the ADA or Rehabilitation Act. (*Id.* at 5-11 [attaching pages "3" through "9" of Defs.' Memo. of Law].) Specifically, Plaintiff has failed to allege and/or

---

[3] In addition, in his Complaint, Plaintiff cites 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. (Dkt. No. 1, at 1.) However, even when construed with the utmost of special liberality, the Court can perceive no factual allegations plausibly (or even conclusorily) suggesting such a claim. (*Id.*) *See also, e.g., Shariff v. Coombe*, 655 F. Supp.2d 274, 301 (S.D.N.Y. 2009) ("Because the disabled are not a suspect or quasi-suspect class, rational basis scrutiny–that the disparity be rationally related to a legitimate governmental purpose–is the appropriate level of review in such cases."). The Court notes that Defendants purposely omit this claim for their recitation of Plaintiff's claims, explaining that it is not actionable. (Dkt. No. 31, Attach. 13, at 3, 12 [attaching pages "1" and "10" of Defs.' Memo. of Law].) However, in his response to Defendants' motion for summary judgment, Plaintiff does not explain how this claim is actionable. (Dkt. No. 36, Attach. 2.) For all of these reasons, the Court does not list such a claim among the claims that Plaintiff asserts.

establish that (a) there was any deliberate discrimination by Defendants against him because of his disability, (b) there was any significantly adverse or disproportionate impact on Plaintiff compared to other groups of individuals (based on the acts in question), and (c) there was any lack of meaningful access to a government resource or any plausible method of remedying that lack of meaningful access, especially given the fact that the wheelchair lift was broken and being repaired, and that the cost of renovating the gymnasium (the only building in which Family Day Festival could have been held) was unduly burdensome to the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Id.*)

Second, argue Defendants, to the extent Plaintiff asserts claims against the individual Defendants under the ADA and Rehabilitation Act, those claims should be dismissed, because there is no individual liability under either of those statutes. (*Id.* at 11-12 [attaching pages "9" and "10" of Defs.' Memo. of Law].)

Third, argue Defendants, Plaintiff's claim against Defendant "Jane Doe" should be dismissed because (a) he has failed to identify her, and (b) his allegations against her state no identifiable claim. (*Id.* at 12 [attaching page "10" of Defs.' Memo. of Law].)

Fourth, argue Defendants, Plaintiff's claim for injunctive relief should be dismissed as moot because his brother is no longer incarcerated at Coxsackie Correctional Facility and is now at Eastern Correctional Facility. (*Id.*)

### 2.      Plaintiff's Opposition Affidavit

Generally, in his opposition affidavit, Plaintiff asserts five arguments. (Dkt. No. 36, Attach. 2 [Plf.'s Opp'n Affid.].)

First, argues Plaintiff, he was intentionally discriminated against and subjected to disparate treatment, because, during his attempted visit on April 30, 2011, Defendants Meigs, Slaven and Jane Doe told Plaintiff that, because the wheelchair lift was broken, the only way Plaintiff could enter the facility would be to crawl up the stairs while personnel carried up his wheelchair. (*Id*. at ¶¶ 1, 7.)

Second, argues Plaintiff, Defendants' evidence that the cost of renovating the gymnasium was unduly burdensome is immaterial and/or unpersuasive, because (a) Plaintiff "meets the essential eligibility requirements to have participated in the Family Day Festival and visit of his beloved brother," (b) Defendants could have accommodated his disability by allowing him to enter the gymnasium through a ground-level door or using a "Portable ramp" in the gymnasium (as Great Meadow Correctional Facility has done), and (c) both Great Sing Sing Correctional Facility and Auburn Correctional Facility are ADA compliant. (*Id*. at ¶¶ 2-3, 5-6, 8.)

Third, argues Plaintiff, the fact that his brother no longer resides at Coxsackie Correctional Facility does not render his claims moot because DOCCS has an "ongoing obligation" under the ADA, and his brother might be transferred back to Coxsackie Correctional Facility at some point in the future. (*Id*. at ¶¶ 2-3, 12.)

Fourth, argues Plaintiff, in addition to the other conditions he alleges, the bathroom adjacent to the visitation room was not wheelchair accessible, which caused him to cut short his visit to his brother "on many occasions." (*Id*. at ¶¶ 4, 9.)

Fifth, argues Plaintiff, he has now identified Jane Doe as "Correctional Officer Donnelly," and would like to amend his Complaint accordingly. (*Id*. at ¶¶ 1, 15.)

### C.     Parties' Briefing on Defendants' Motion to Amend Their Answer

Generally, in their memorandum of law, Defendants request that they be granted leave to amend their Answer to include a defense in Paragraph 15 (asserting that it would pose an undue burden on DOCCS to renovate the gymnasium at Coxsackie Correctional Facility to make it wheelchair accessible) and a defense in Paragraph 16 (asserting that the temporary malfunction of the wheelchair lift did not constitute a discriminatory practice).  (Dkt. No. 31, Attach. 13, at 13-14 [attaching pages "11" and "12" of Defs.' Memo. of Law]; Dkt. No. 31, Attach. 1, at ¶¶ 13-15; *cf.* Dkt. No. 32, Attach. 1.)  Defendants argue that they should be granted such leave because (1) the defenses arose out of the conduct, transaction or occurrence set in Plaintiff's Complaint, (2) Defendants did not realize the need to assert the defenses until they recently received materials from Affirmative Action Administrator Lucy Buther and Facilities Planner Jerry Lindecke, and (3) Plaintiff has known, or should have known, of the facts relied on by the defenses, especially given his knowledge of the age of Coxsackie Correctional Facility as compared to the other prisons he has visited.  (*Id.*)

Generally, in response, Plaintiff argues that leave to amend should be denied because, although "Defendants[] claim that Plaintiff is not surprise[d] by these [amendments] . . .[,] [q]uite frankly, Plaintiff is indeed surprise[d] and will be prejudice[d] by these amendments." (Dkt. No. 36, Attach. 2, at ¶¶ 15-17 [Plf.'s Opp'n Affid.].)

**D.      Parties' Briefing on Plaintiff's Cross-Motion for Summary Judgment**

Generally, in his memorandum of law, Plaintiff asserts three arguments: (1) in focusing on an undue-burden defense, Defendants admit that (a) Plaintiff is a qualified individual with a disability under the ADA, (b) they denied him access to the facility's visitation room on April 30, 2011, by not ensuring that the visitation room's wheelchair lift was working, and by requiring him to crawl up the steps if he wanted to enter it (which, in addition, constituted an "atypical and significant hardship"), (c) they harassed him by searching his person and his wheelchair upon entrance to the facility on May 7, 2011, and (d) they deprived him of participation in the Family Day Festival on June 25, 2011, by not making the gymnasium wheelchair accessible; (2) Defendants' undue-burden defense is without merit because, rather than arguing that no reasonable accommodations are possible (due to the gymnasium's structure and age), Defendants argue merely that they "do not want to spend the [$750,000 necessary] to implement reasonable accommodations," which is "inconsistent with the premise of [the] A.D.A."; and (3) as a result, the record is devoid of any evidence establishing that the discrimination that Plaintiff experienced was *not* intentional.  (Dkt. No. 38, Attach. 3 [Plf.'s Memo. of Law].)  In support of his motion, Plaintiff submits a Statement of Material Facts that is devoid of any supporting record citations.  (Dkt. No. 39.)

Generally, in their opposition memorandum of law, Defendants assert two arguments: (1) Plaintiff's motion for summary judgment should be denied because it is untimely and he has offered no excuse for that untimeliness; (2) in the alternative, Plaintiff's motion for summary judgment should be denied because he has failed to establish that (a) he was denied a reasonable accommodation when he attempted to visit his brother on April 30, 2011, and (b) Defendants

were required the modify the gymnasium based on the burden imposed by that modification. (Dkt. No. 41, Attach. 2 [Defs.' Opp'n Memo. of Law].)  Defendants support their denials of various of Plaintiff's factual assertions with accurate record citations.  (Dkt. No. 41, Attach. 1.)

Generally, in his reply declaration, Plaintiff asserts three arguments (in addition to repeating previously asserted arguments): (1) Plaintiff's motion for summary judgment was not untimely because he sought, and was granted, an extension of the deadline to file a response to Defendants' motion for summary judgment; (2) if the Court finds that Plaintiff's motion is untimely, then it should also find that Defendants' proposed Amended Answer is untimely, because Plaintiff would be prejudiced by Defendants' new affirmative defenses; and (3) even if the Court believes that a fact is not genuinely in dispute, it may refrain from granting summary judgment based on that fact.  (Dkt. No. 44 [Plf.'s Reply Decl.)

### E.      Parties' Briefing on Plaintiff's Cross-Motion to Amend His Complaint

Generally, in support of his cross-motion to amend his Complaint, Plaintiff argues that (1) he is "within the statutory time limitation to file a 42 USC § 1983 action," and (2) Defendants "would not be prejudiced by responding to the additional claim[s] because they relate back to the initial claims in the complaint."  (Dkt. No. 45, at 1.)  Plaintiff's cross-motion does not describe his proposed amendments.  (*Id.* at 1-12.)

While the Court declines to conduct a tedious comparison of Plaintiff's proposed Amended Complaint and his original Complaint, it notes that generally, liberally construed, Plaintiff's Amended Complaint appears to attempt to, *inter alia*, do the following: (1) add Plaintiff's brother, Trevis L. Funches, as a plaintiff; (2) replace Defendant Jane Doe with Defendant C.O. Donnelly; (3) drop Defendant John Doe as a Defendant; (4) assert numerous

new factual allegations; (5) add some sort of Eighth and/or Fourteenth claim under 42 U.S.C. § 1983, arising from the exclusion of Trevis' "common law wife, Felicia Bowens" from the Family Day Festival; (6) add a claim of disability discrimination under the Fourteenth Amendment and 42 U.S.C. § 1983, arising from the events of April 30, 2011, and June 25, 2011; and (7) add a claim of religious discrimination under the Religious Land Use and Institutionalized Persons Act of 2000 and the Free Exercise Clause of the First Amendment, because the Family Day Festival occurred "in the Holy month of Ramadan." (Dkt. No. 45.)

Generally, in opposition to Plaintiff's cross-motion, Defendants assert the following four arguments: (1) Trevis Funches' motion to amend should be denied for lack of standing; (2) the motion to amend should be denied as untimely, in large part because the facts giving rise to the proposed claims was known to Plaintiff long before he made his motion, and no excuse is offered for his delay; (3) the motion to amend should be denied because many of the claims asserted in Plaintiff's proposed Amended Complaint are not sufficiently related to the claims in the original Complaint; and (4) the motion to amend should be denied as futile, because Plaintiff has pled himself out of court based on the exhaustion-of-administrative-remedies requirement, and Plaintiff's allegations regarding C.O. Donnelly's search of his wheelchair are so vague as to not be actionable. (Dkt. No. 47 [Defs.' Opp'n Memo. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material

fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

###     B.      Motion to Amend a Pleading

Rule 15 of the Federal Rules of Civil Procedure governs motions for leave to amend a "pleading," which includes both a complaint and an answer. Fed. R. Civ. P. 15(a); Fed. R. Civ. P. 7(a). Pursuant to Fed. R. Civ. P. 15, leave to amend a complaint or answer should be freely

given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182

(1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Nevertheless, such leave to

amend is not automatic; and a court may deny a motion for leave to amend where there is an

apparent or declared reason not to grant leave to amend, "such as [1] undue delay, bad faith or

dilatory motive on the part of the movant, [2] repeated failure to cure deficiencies by

amendments previously allowed, [3] undue prejudice to the opposing party by virtue of the

allowance of the amendment, [4] futility of amendment, etc." *Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979).

Moreover, where a motion to amend a pleading is filed after the deadline for such

motions established by a scheduling order, the movant must show good cause for the failing to

comply with the scheduling order. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340

(2d Cir.2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its

discretion in denying leave to amend the pleadings after the deadline set in the scheduling order

where the moving party has failed to establish good cause."); Fed. R. Civ. P. 16(b)(4), (f)(C) ("A

schedule may be modified only for good cause and with the judge's consent. . . . On motion or

its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a

scheduling or other pretrial order.").

### C. Legal Standards Governing Plaintiff's Claims

Because Defendants have, in their memoranda of law, accurately recited the legal

standards governing Plaintiff's ADA and Rehabilitation Act claims in this action, the Court will

not recite, in their entirety, those legal standards in this Decision and Order, which (again) is

intended primarily for the review of the parties, but will merely refer the reader to the relevant

portions of those memoranda. (*See* Dkt. No. 31, Attach. 13, at 5-12 [attaching pages "3" through "10" of Defs.' Memo. of Law]; Dkt. No. 41, Attach. 2, at 8-11 [attaching pages "6" through "9" of Defs.' Opp'n Memo. of Law].)

## III. ANALYSIS

### A. Procedural Errors in Plaintiff's Motion Papers

As a threshold matter, the Court notes that there are two procedural errors in Plaintiff's motion papers.

First, Defendants assert 56 paragraphs of factual assertions in their Statement of Material Facts, each of which is supported by an accurate record citation. (Dkt. No. 31, Attach. 12.) In response, Plaintiff submits a response to the Statement of Material Facts, which does not contain matching numbered paragraphs (containing only eight paragraphs), and does not support denials with accurate record citations. (Dkt. No. 36, Attach. 1.) Ordinarily, this would result in a finding that Plaintiff has admitted to the facts asserted in Defendants' Statement of Material Facts. N.D.N.Y. 7.1(a)(3).

However, Plaintiff is proceeding *pro se*, and Defendants cannot certify that they attached the District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" to their Notice of Motion, as represented therein. (*Compare* Dkt. No. 31, at 2 *with* Dkt. No. 50.) Such a Notification was necessary, because the brief synopsis of the notice that Defendants provided Plaintiff was not sufficiently specific with regard to the consequences of failing to deny Defendants' factual assertions in matching numbered paragraphs supported by accurate record citations. *See Cruz v. Church*, 05-CV-1067, 2008 WL 4891165, at *2-3 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.). Moreover, it does not appear from the docket sheet

that Plaintiff received a courtesy copy of either the Court's Local Rules of Practice or the District's *Pro Se* Handbook. (*See generally* Docket Sheet.) Finally, from a review of the federal judiciary's Public Access to Court Electronic Records ("PACER") service, it appears that, before the time in question, Plaintiff had only minimal experience opposing a motion for summary judgment filed by DOCCS in a federal civil rights action. *See Funches v. Reich*, 97-CV-7611, Affid. in Support of Plf.'s Motion to Deny Defs.' Motion for Summary Judgment (S.D.N.Y. filed June 1, 1998).

For all of these reasons, the Court will not deem admitted the properly supported facts set forth in Defendants' Statement of Materials Facts that Plaintiff has not controverted in matching numbered paragraphs supported by accurate record citations. For similar reasons, the Court will not deny Plaintiff's cross-motion for summary judgment merely because he failed to support the factual assertions in his Statement of Material Facts with accurate record citations (or any record citations). (Dkt. No. 39.)

Second, the deadline for motions for summary judgment and motions to amend pleadings in this action was January 18, 2013. (Dkt. No. 16, at 2-4; Dkt. No. 27; Text Order filed Dec. 17, 2012; Text Order filed Jan. 7, 2013.)[4] In compliance with these deadlines, Defendants filed their combined motion for summary judgment and motion to amend their Answer on January 18, 2013. (Dkt. No. 31.)

It is important to note that, in addition to seeking the dismissal of Plaintiff's Complaint based on evidentiary insufficiencies, Defendants' motion sought dismissal of Plaintiff's

---

[4] The deadline for motions to amend pleadings was actually February 1, 2012; however, due to an ambiguity in the Uniform Pretrial Scheduling Order, the Court will liberally construe that deadline as the same as the deadline for other motions (other than motions regarding venue and jurisdiction). (Dkt. No. 16, at 2.)

Complaint based on pleading deficiencies. (Dkt. No. 31, Attach. 13, at 5-12 [Defs. Memo. of Law, attaching pages "3" through "10," arguing that Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, and/or failure to establish a claim].)[5]

Under the Local Rules of Practice for this Court, any competing request by Plaintiff for relief or order similar to that requested by Defendants would have been a cross-motion. N.D.N.Y. L.R. 7.1(c). Certainly, Plaintiff's motion for summary judgment fell into this category. In addition, Plaintiff's motion to amend his Complaint under Fed. R. Civ. P. 15 fell into this category, because it sought to correct the pleading defects identified in Defendants' motion, which sought dismissal of Plaintiff's claims with prejudice based on a failure to state a claim.[6]

Moreover, under the Local Rules of Practice for this Court, Plaintiff's cross-motion had to be combined with his response to Defendants' motion. N.D.N.Y. L.R. 7.1(c) ("A party may file and serve a cross-motion . . . at the time in files and serves its opposition papers to the original motion . . . If a party makes a cross-motion, it must join its cross motion brief with its opposition brief . . . .").

---

[5]     To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir.1968) (citations omitted); *accord, Katz v. Molic*, 128 F .R.D. 35, 37-38 (S.D.N.Y.1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

[6]     *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (characterizing plaintiff's motion to amend, filed in attempt to cure defects identified in defendants' motion to dismiss under Fed. R. Civ. P. 12[b][6] as a "cross-motion"); *accord, Lesperance v. Cnty. of St. Lawrence*, 10-CV-1273, 2011 U.S. Dist. LEXIS 92439, at *1-2 (N.D.N.Y. Aug. 18, 2011); *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 57, 64 (S.D.N.Y. 2010).

Here, according to the briefing schedule established by the Court, Plaintiff's response to Defendants' motion (and Plaintiff's cross-motion) was due on March 4, 2013. (*See* Text Notice filed Jan. 18, 2013; Text Order filed Feb. 1, 2013.) Plaintiff compliantly filed that response on February 21, 2013. (Dkt. No. 36.)

However, Plaintiff did not combine his cross-motion for summary judgment with that response. (Dkt. No. 38.) Nor did he combine his cross-motion to amend with that response. (Dkt. No. 45.) Plaintiff's briefing practice has resulted in the piecemeal briefing of the pending motions and cross-motions, enlarging without permission the number of briefs from three (*see* N.D.N.Y. L.R. 7.1[c]) to seven (*see* Dkt. No. 31, Attach. 13; Dkt. No. 36, Attach. 2; Dkt. No. 38, Attach. 3; Dkt. No. 41, Attach. 2; Dkt. No. 44; Dkt. No. 45; Dkt. No. 47), and causing the parties to confuse rather than refine the legal and factual issues before the Court.

However, out of an extension of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court will overlook these particular briefing errors (although the untimeliness of Plaintiff's cross-motion for summary judgment and his cross-motion to amend, discussed below in Parts III.D. and III.E. of this Decision and Order, is another matter).

### B. Defendants' Motion for Summary Judgment

After carefully considering the matter, the Court grants Defendants' motion for summary judgment for each of the reasons stated in their memorandum of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds only six brief points.

First, based on the current record, it is uncontroverted that the wheelchair lift at the front entrance to Coxsackie Correctional Facility was inoperable for, *at most*, a period of 35 days (i.e., from April 28, 2011, to June 2, 2011). (Dkt. No. 31, Attach. 4 [repair records].) During the

entirety of that period, Defendants made rather diligent efforts to repair the wheelchair lift. (*Id.*; *see also* Dkt. No. 31, Attach. 11, at ¶ 9; Dkt. No. 31, Attach. 10, at ¶ 3.)[7] Moreover, despite the inoperability of the lift, Plaintiff was able to successfully visit his brother on May 7, 2011, with the assistance of Correctional Officer Dancy and others. (Dkt. No. 1, at ¶ 30; Dkt. No. 36, Attach. 3, at ¶¶ 8-9.) The Court notes that, based on the current record, it is clear that Defendants (1) did not cause the problem with the lift, (2) regularly inspected the lift, (3) promptly requested service upon learning of the problem, and (4) offered to carry Plaintiff's wheelchair up the stairs while assisting him make his own way up the stairs. (Dkt. No. 31, Attach. 4; Dkt. No. 31, Attach. 11, at ¶¶ 7-8; Dkt. No. 31, Attach. 10, at ¶ 3; Dkt. No. 31, Attach. 3, at 57; Dkt. No. 36, Attach. 2, at ¶ 1; Dkt. No. 36, Attach. 3, at 2, ¶ 9; Dkt. No. 36, Attach. 3, at 12; Dkt. No. 1, at ¶ 12.)[8] Under these circumstances, the Court simply cannot find that the temporary inoperability of the wheelchair lift (which was outside of Defendants' control) gives rise to a claim under either the ADA or Rehabilitation Act. *Cf. Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 849-50 (9th Cir. 2001) (finding that, in the context of public bus transportation, "isolated or temporary problems caused by [wheelchair] lift malfunctions are not violations of the ADA").

---

[7]      For example, Coxsackie Correctional Facility promptly requested service of the wheelchair lift upon learning of its malfunction on April 28, 2011. (Dkt. No. 31, Attach. 4, at 4, 8.) An agent of the facility signed a repair authorization on April 29, 2011. (*Id*. at 5.) The wheelchair lift was repaired by service technician by May 5, 2011. (*Id*. at 6-8.) However, the wheelchair lift broke again by May 6, 2011, and it was shipped out for repair. (*Id*. at 1-2.) Repair was completed by June 2, 2011. (*Id*. at 9.)

[8]      While Defendants refused to let people try to carry Plaintiff up the stairs at the facility on April 30, 2011, they explained they did so out of a concern for Plaintiff's safety, as well as the liability to which Defendants might be subjected if Plaintiff fell and/or was dropped. (Dkt. No. 31, Attach. 3, at 32-34; Dkt. No. 31, Attach. 3, at 58; cf. Dkt. No. 31, Attach. 11, at ¶ 2 [mentioning safety as factor in modification of facility].)

Second, Defendants have adduced admissible record evidence that the financial burden of making Coxsackie Correctional Facility's gymnasium compliant with the ADA was between approximately $700,000 and $750,000.  (Dkt. No. 31, Attach. 11, at ¶¶ 10-16; Dkt. No. 31, Attach. 10, at ¶¶ 7, 12.)  Plaintiff has not controverted that evidence with any admissible record evidence.  (*See generally* Dkt. No. 36; *see also, infra,* the third reason in this part of the Decision and Order.)  Moreover, the purpose of the accommodation at issue was to permit any wheelchair-bound family members of inmates to attend a Family Day Festival at the facility on about four days per year.  (Dkt. No. 31, Attach. 10, at ¶ 10; Dkt. No. 31, Attach. 11, at 5-6.)[9]  The Court notes that no record evidence exists establishing that any wheelchair-bound family members are entitled to access the prison gymnasium the other 361 days each year (or even any of the four days in question if the Festival were eliminated from the prison's calendar due to cost and the inability to hold the Festival in any other facility at Coxsackie Correctional Facility).  (Dkt. No. 31, Attach. 10, at ¶¶ 10-11; Dkt. No. 31, Attach. 11, at ¶ 6.)  Under the circumstances, the Court cannot help but find that the expense in question would be an undue one to New York State (whose tax dollars appear otherwise needed at its maximum-security prisons).  *See* 42 U.S.C. § 12111(10)(B) (listing "the nature and cost of the accommodation," "the overall financial resources of the facility," "the impact . . . of such accommodation upon the operation of the facility," and "the type of operation . . . of the covered entity" among the factors to be considered in determining whether the accommodation would impose an undue hardship under the ADA); *Dorsey v. Sullivan*, 10-CV-0744, 2013 WL 4776344, at *7-8 (W.D.N.Y. Sept. 3, 2013)

---

[9]     The Court notes that DOCCS does not place wheelchair-bound inmates in the general population at Coxsackie Correctional Facility; rather, those inmates are placed in other, wheelchair-accessible facilities.  (Dkt. No. 31, Attach. 10, at ¶¶ 8-9.)

(accepting defendants' argument that replacing all standard door knobs with lever door openers in Livingston Correctional Facility was unnecessary and cost prohibitive, such that offering the accommodation would have posed an undue hardship on the correctional facility's operation).

Third, for the sake of brevity, the Court will not linger on the minimal materiality of Plaintiff's affidavit testimony regarding the existence of a ground-level door to the gymnasium, whether a "portable ramp" would have complied with the ADA (or even a feasible avenue of travel for his wheelchair), and whether the facilities at Great Meadow Correctional Facility, Sing Sing Correctional Facility and Auburn Correctional Facility comply with the ADA is of minimal materiality, under the circumstances. (Dkt. No. 36, Attach. 2, at ¶¶ 5-6, 8.)  More important is the fact that such testimony is so lacking in any indication of personal knowledge as to render the assertions speculative and/or conclusory.  The Court notes that the affidavit of Plaintiff's brother is similarly devoid of personal knowledge of those three facts.  (*See generally* Dkt. No. 36, Attach. 3.)

Fourth, the fact that Plaintiff's brother *migh*t somehow return to Coxsackie Correctional Facility at some point in the future is too speculative to shield his injunction request from a mootness challenge.  Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").  Moreover, while Defendant Fischer is responsible for generally overseeing Eastern Correctional Facility (as well as Coxsackie Correctional Facility), no showing (or even allegation) has been made that the violations are likely to reoccur at Eastern Correctional Facility.

Fifth, Plaintiff's late-blossoming claim about the allegedly noncompliant bathroom in the visitation room at Coxsackie Correctional Facility (Dkt. No. 36, Attach. 2, at ¶¶ 4, 9) is rejected on each of two alternative grounds: (1) that claim is late-blossoming (because it does not appear in his Complaint, and discovery in this action has ended); and (2) that claim is unsupported by the admissible record evidence, which establishes that the bathroom in the facility's main corridor adjacent to the visitation room is ADA compliant (*see, e.g.,* Dkt. No. 31, Attach. 10, at ¶ 5; Dkt. No. 31, Attach. 11, at ¶ 3).

Sixth, and finally, out of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court is inclined to accept Plaintiff's identification of Defendant Jane Doe as "Correctional Officer Donnelly" even thought that identification is incomplete (lacking a first name) and belated.[10]  However, such an extension of special solicitude would not change the outcome of Defendants' motion, given the other defects in Plaintiff's claims against C.O. Donnelly, as described above.  To these defects the Court adds only that, based on the current record evidence, it is undisputed that visitors and their metal wheelchairs may be searched, including by hand frisk, for contraband to maintain security (and that visitors with criminal histories may be subjected to additional restrictions).  (Dkt. No. 32, Attach. 2, at 2-5, ¶¶ III.E., IV.B., V.B., VI.A.)

For all of these reasons, the Court grants Defendants' motion for summary judgment.

## C.     Defendants' Motion to Amend Their Answer

After carefully considering the matter, the Court grants Defendants' to amend their answer for each of the reasons stated in their memorandum of law.  *See, supra,* Part I.B.1. of this

---

[10]     For example, Plaintiff offered this identification for the first time on February 21, 2013 (Dkt. No. 36, Attach. 2; Dkt. No. 36, Attach. 4, at 1)–more than three months after the deadline for discovery expired on November 15, 2012, and more than a month after the deadline for motions to amend expired on January 18, 2013.  (Dkt. No. 16, at 2-4; Dkt. No. 27; Text Order filed Dec. 17, 2012; Text Order filed Jan. 7, 2013.)

Decision and Order. To those reasons, the Court adds only the following analysis.

For the sake of brevity, the Court will assume that the defense asserted in Paragraph 16 of Defendants' proposed Amended Answer (asserting that the temporary malfunction of the wheelchair lift did not constitute a discriminatory practice) is indeed an affirmative defense that needs to be pled in order to be relied on in a motion for summary judgment, although that fact is not entirely clear to the Court. Rather, it appears that the issue presented by Paragraph 16 is an issue on which Plaintiff may bear the burden. *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996) ("[D]iscrimination is defined to be a failure to implement reasonable accommodations, suggesting that the plaintiff bears the burden of proof on that issue.") [internal quotation marks omitted].

In any event, cause exists to grant Defendants' motion. Defendants' motion complies with the January 18, 2013, deadline for the filing of motions to amend pleadings. (*See, supra,* note 4 of this Decision and Order, and accompanying text.) Furthermore, Defendants have explained why they did not make their motion long before January 18, 2013. *See, supra,* Part I.C. of this Decision and Order. In addition, Defendants' motion is supported by an affidavit and it sets forth the proposed amendments. (Dkt. No. 31, Attach. 1, at ¶¶ 13-15; Dkt. No. 32, Attach. 1.) Finally, Plaintiff's assertion of prejudice is vague and conclusory. *See, supra,* Part I.C. of this Decision and Order. The facts on which Defendants rely in Paragraph 16 (e.g., the briefness of the delay and the fact that repair services had been requested, etc.) were clearly known to Plaintiff early in the action, having appeared in attachments to his Complaint (*see, e.g.,* Dkt. No. 1, at 9). Moreover, the facts on which Defendants rely in Paragraph 15 (e.g., the relative age of Coxsackie Correctional Facility as compared to other New York State correctional facilities)

appear to have been known to Plaintiff well before the amendment was sought (*see, e.g.,* Dkt. No. 36, Attach. 2, at 3, ¶ 6).

For all of these reasons, the Court grants Defendants' motion to amend their Answer.

### D.    Plaintiff's Cross-Motion for Summary Judgment

After carefully considering the matter, the Court denies Plaintiff's cross-motion for summary judgment for each of the reasons stated in Defendants' opposition memorandum of law. *See, supra,* Part I.D.2. of this Decision and Order. To those reasons, the Court adds the analysis set forth above in Part I.B. of this Decision and Order. In addition, the Court adds the following two brief points.

First, Plaintiff's cross-motion for summary judgment was due at the time of his response to Defendants' motion for summary judgment. N.D.N.Y. L.R. 7.1(c). Granted, Plaintiff received an extension of the deadline by which to file that response–until March 4, 2011. (Text Order dated Feb. 1, 2013.) However, he did not in fact file his cross-motion for summary judgment with that response. (*Compare* Dkt. No. 36 *with* Dkt. No. 38.) Rather, he waited another 46 days–until April 19, 2011–to file his cross-motion for summary judgment. (Dkt. No. 38.) Even if the Court were inclined to set aside his non-compliance with the deadline imposed by Local Rule 7.1(c), Plaintiff would be left with the deadline imposed by the Court's Scheduling Order. That deadline was January 18, 2011–91 days before he filed his cross-motion. (Dkt. No. 16, at 2-4; Dkt. No. 27; Text Order filed Dec. 17, 2012; Text Order filed Jan. 7, 2013.) This fact alone may, and does, serve as a sufficient ground on which to base a denial of Plaintiff's motion for summary judgment.

Second, with all due respect to Plaintiff's argument that the Court should deny

Defendants' motion to amend their Answer if it chooses to deny his cross-motion for summary

judgment, that argument appears to the Court to be a non-sequitur. The fact that Plaintiff's

cross-motion for summary judgment is untimely does not mean that an amendment of

Defendants' Answer is untimely or unduly prejudices Plaintiff.

For all of these reasons, the Court denies Plaintiff's cross-motion for summary judgment.

**E.     Plaintiff's Cross-Motion to Amend His Complaint**

After carefully considering the matter, the Court denies Plaintiff's cross-motion to amend

his Complaint for each of the following three alternative reasons.

First, Plaintiff's cross-motion to amend (filed on June 19, 2013) is in violation of the

January 18, 2013, deadline for the filing of motions to amend pleadings (*see, supra,* note 4 of

this Decision and Order, and accompanying text), and the March 4, 2013, deadline for the filing

of cross-motions (*see, supra,* Parts III.A. and III.D. of this Decision and Order). Furthermore,

Plaintiff has failed to show good cause excusing this violation. *See, supra,* Part II.B. of this

Decision and Order (setting forth relevant legal standard). This failure is exacerbated by the fact

that discovery is closed and Defendants have already incurred the expense of filing a motion for

summary judgment; it would be both inefficient and unfair to permit Plaintiff to now change the

landscape of his claims.

Second, Plaintiff's cross-motion is unsupported by an affidavit, in violation of Local

Rules of Practice for this Court. N.D.N.Y. L.R. 7.1(a)(2). This affidavit is necessary because,

inter alia, it serves as the vehicle by which the movant presents to the Court evidence regarding

such things as the reason for the delay in seeking the amendment. Moreover, Plaintiff's cross-

motion does not set forth the proposed amendments, in violation of Local Rule 7.1(a)(2). Again, fulfilling this requirement is necessary, because it enables the Court (and opposing party) to identify which particular amendments are being proposed. The Court notes that, while it has cursorily summarized what appear to be various amendments contained in Plaintiff's proposed Amended Complaint above in Part I.E. of this Decision and Order, the Court declines to conduct a tedious comparison of the proposed Amended Complaint and original Complaint: that is Plaintiff's duty.

Third, under the circumstances, the relevant factors weigh decidedly against granting the cross-motion to amend. *See, supra,* Part II.B. of this Decision and Order (setting forth relevant legal standard). For example, at the very latest, Plaintiff should have filed this cross-motion to amend with his cross-motion for summary judgment on April 19, 2013, and has not shown cause for excusing its undue delay. Moreover, Defendant will suffer undue prejudice if the cross-motion is granted, because (1) the memories of material witnesses have likely faded, and relevant documents have likely been destroyed, regarding the events giving rise to this action, which occurred nearly three years ago (on April 30, 2011),[11] and (2) again, discovery is closed and Defendants have already incurred the expense of filing a motion for summary judgment. Finally, for the many reasons offered by Defendants, the Court finds that, in the alternative, Plaintiff's proposed Amended Complaint is largely, if not entirely, futile. *See, supra,* Parts I.B.1. and I.E. of this Decision and Order. *See also, supra,* note 3 of this Decision and Order.

For all of these reasons, the Court denies Plaintiff's cross-motion to amend his Complaint.

---

[11]     *See Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is

**GRANTED**; and it is further

**ORDERED** that Defendants' motion to amend their Answer (Dkt. No. 31) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 38) is

**DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend his Complaint (Dkt. No. 45) is

**DENIED**.  The clerk is directed to enter judgment and close this case.


Dated: March 31, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge